UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| KENNETH A. TURNER<br><br>Plaintiff,<br><br>v.<br><br>ALAN R. REYNOLDS; MICHAEL A. PARAMO; FRANCIS M. CUTRUZZOLA; CYNTHIA M. TROISI; LORI B. MARTIN; ALL MOBILE SOLUTIONS, LLC; and<br>AMS MANAGEMENT SERVICE CORP<br><br>Defendants. | Case No. |

## COMPLAINT FOR DAMAGES

**COME NOW** Plaintiff Kenneth A. Turner, by and through undersigned counsel, state as follows for his Petition for Damages against Defendants Alan R. Reynolds ("Defendant Reynolds"), Michael A. Paramo ("Defendant Paramo"), Francis M. Cutruzzola ("Defendant Cutruzzola"), Cynthia M. Troisi ("Defendant Troisi"), Lori B. Martin ("Defendant Martin"), All Mobile Solutions, LLC ("Defendant All Mobile Solutions"), and AMS Management Service Corp. ("Defendant AMS"):

### INTRODUCTION

1. Plaintiff is an owner of multiple timeshare interests as a consumer. Timeshare, as a general rule, is difficult for a consumer to divest themselves of as there tends to be a very small

market which is difficult for a consumer to access in order to sell their timeshare interests, if the market exists at all.

2. The consequence for Plaintiff to be unable divest himself of the timeshare interests, is that he remains responsible for maintenance fees and payments for the timeshare interests.

3. Defendants are aware of this difficulty for owners of timeshare interests to divest themselves of their timeshares and free themselves from the maintenance fee obligations. They thus have created a scheme to bilk timeshare owners of money with promises that they will be freed of their timeshare obligations and that they will even recover money for the timeshare owner from the resort or others the consumer has paid for services related to the timeshare.

4. This scheme, at its essence, is to call owners of timeshare interests across the United States, promising to those timeshare owners that the Defendants can terminate the owners' timeshare interest for a fee. Once that fee is paid, the Defendants will call continuously and fabricate reasons for the timeshare owner to pay more money. The Defendants will call and fabricate reasons for more money until the timeshare owner objects. At that time, Defendants will promise that the case is almost complete, and that Defendants are unable to finish the process without the additional fee, thus the timeshare owner will lose all the money paid to date.

5. In reality, Defendants were not providing the services promised, unable by law to provide those services, the rationale for additional funds were false and Defendants knew they were false. In short, Defendants' activity and scheme was fraudulent from the beginning.

6. Because of this scheme, the fraudulent activity, and the enterprise created to perpetuate the scheme, Plaintiff has paid Defendants $204,355.00 over a period of three years.

7. More Specifically, over a three year period, Defendants scheme was to call Plaintiff; promise timeshare exit services for the timeshare interests he knew he owned; misrepresent they discovered additional timeshare contract that Plaintiff is required to pay for in order to completely be free of the timeshare obligations; promise they can recover funds Plaintiff paid to the timeshare developer for additional fees; promise they can recover funds from previous companies Plaintiff paid in order to get out of his timeshares; and finally to finish the processing of his case.

8. Defendant's misconduct gives rise to numerous violations of the law, including Wire Fraud, though as a predicate act, and Racketeering Influenced Corrupt Organizations violations. Plaintiff brings this action to recover the damages Defendants' misconduct has caused to Plaintiff.

## JURISDICTION, PARTIES, AND VENUE

9. This Court has subject-matter jurisdiction pursuant to 28 USC § 1331 because a federal question is presented under Racketeering Influenced Corrupt Organizations Act, 18 USC §1962 (c) and (d).

10. Plaintiff Kenneth A. Turner is of lawful age and a citizen of Georgia.

11. Defendant Alan R. Reynolds is of lawful age and a citizen of Florida.

12. Defendant Michael A. Paramo is of lawful age and a citizen of Florida.

13. Defendant Francis M. Cutruzzola is of lawful age and a citizen of Florida.

14. Defendant Cynthia M. Troisi is of lawful age and a citizen of Florida.

15. Defendant Lori B. Martin is of lawful age and a citizen of Florida.

16. Defendant All Mobile Solutions, LLC is a limited liability company that has its principal place of business in Volusia County, Florida. As all its members are citizens of Florida, Defendant All Mobile Solutions is a citizen of Florida.

17. Defendant AMS Management Service Corp is a corporation that has a principal place of business in Volusia County, Florida. As all its members are citizens of Florida, Defendant All Mobile Solutions is a citizen of Florida.

18. Defendants Cutruzzola, Paramo, and Reynolds are the sole members of Defendants All Mobile Solutions and AMS.

19. Venue is proper in this Court pursuant to 28 USC §1391 (b) (1) and (2) as well as 18 USC §1965 (a).

20. All Defendants reside in the State of Florida and some or all reside in this judicial district and all affairs of Defendants have been transacted at all relevant times in this judicial district.

21. A substantial part of the events giving rise to this claim occurred in the boundaries of this judicial district.

**COUNT I**
**RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS**
**18 USC §1962(c) and (d)**

22. Plaintiff realleges and reincorporates the preceding allegations set forth above as if more fully set forth herein.

23. Defendants have conspired, as persons employed by or associated with an enterprise engaged in interstate commerce, to conduct or participate in the enterprise's affairs through a pattern of racketeering activity in violation of 18 USC §1962 (c) and (d).

### The Enterprise

24. Defendants Reynolds, Paramo, and Cutruzzola control and operate All Mobile Solutions and AMS. The entities operate as alter egos of each other, they share phone numbers, offices, bank accounts, and staff and have identical offerings to the public.

25. Defendants Troisi and Martin are employees of Defendants All Mobile Solutions and AMS and hired and directed by Defendants Reynolds, Paramo, and Cutruzzola to perform the actions described herein.

26. All Defendants are employed by or associated together with the common purpose of soliciting timeshare owners throughout the United States to pay money to the various legal entities in the enterprise for the described purpose of terminating the timeshare contracts and recover the funds expended on those timeshare contracts.

27. Defendants' association occurred at least between 2016 and at the time of this filing.

28. Defendants created and operated through the legal entities, Defendants All Mobile Solutions and AMS for the purpose of providing perceived legitimacy to the targets of the enterprise.

29. Defendants Cutruzzola, Paramo, and Reynolds created the schemes described herein below thus participating in the pattern of racketeering activity described herein. Additionally, said Defendants, organized the legal entities in the enterprise, opened the bank accounts, and hired, directed, and supervised the employees in the enterprise.

30. Defendants Troisi and Martin, throughout the course of this scheme by Defendants, and between 2016 through 2019, solicited Plaintiff to pay monies to Defendants All Mobile Solutions and AMS at various times, participating in the pattern of racketeering activities described herein.

31. The enterprise was in effect at least between 2016-present.

32. The enterprise regularly calls, emails, and solicits beyond the State of Florida, specifically in Plaintiff's case, into the State of Georgia. Thus, the enterprise affects interstate commerce.

### Pattern of Racketeering Activity
### 18 USC §1343 (Wire Fraud)

33. On no less than seventeen (17) occasions, Defendants either participated in, caused, or conspired to commit acts which are indictable under 18 USC §1343 (wire fraud).

34. Defendants, having devised a scheme or artifice to defraud, or for obtaining money by means of false or fraudulent pretenses, transmitted by means of wire in interstate commerce, sounds for the purpose of executing such scheme or artifice. The acts creating a pattern of racketeering activity are detailed herein.

35. Defendants Cutruzzola, Paramo, and Reynolds devised the scheme to defraud as described herein. Defendants Troisi and Martin through their employers Defendants All Mobile Solutions and AMS knowingly executed the scheme and made fraudulent misrepresentations over wires affecting interstate commerce.

### The Fraudulent Scheme

36. Defendants operate a "timeshare exit" scheme, whereby they created multiple companies all claiming they can terminate a timeshare owner's ownership with their respective

timeshare resort and to make the high dollar cost of the "services" offered by Defendants seem worth the cost, Defendants offer "fraud recovery" services to recover funds paid by the timeshare owner to timeshare resorts or other timeshare exit or resale services.

37. The enterprise claims on its websites to be able to accomplish this service, stating on Defendant's AMS website [www.amscorp](www.amscorp).org: "…*AMS will negotiate you out of your timeshare property…*"

38. Additionally, Defendant All Mobile Solutions states in the agreement for services they will provide expertise and experience with financial fraud and will recover funds on the Plaintiff's behalf from merchants and financial institutions.

39. Defendants All Mobile Solutions and AMS offer a 100% money back guarantee for their services of timeshare exit and financial fraud recovery.

40. Through the various calls described below, Defendants promised Plaintiff that they would terminate Plaintiff's timeshare interests.

41. Through the various calls described below, Defendants promised Plaintiff they would recover funds from other fraudulent activity.

42. Through the various calls described below, Defendants promised Plaintiff they would provide him a 100% money back guarantee if they did not terminate his timeshare interests or recover monies back for him.

43. Through the various calls described below, Defendants promised Plaintiff and continued to promise Plaintiff that the recovery and termination was soon, and money would be recovered shortly.

44. The scheme is designed to attack the target's vulnerability and desire to be free of obligations for their timeshare. The Defendants' scheme is to perpetuate the popular wisdom

that it is difficult to get out of a timeshare and that if the timeshare owner does not get out of their timeshare, then they and their heirs will be subject to high fees.

45. However, the services offered by Defendants All Mobile Solutions and AMS are unlawful to be performed by them even if they intended to perform such services.

46. Virtually every state in the United States prohibits the unlicensed practice of law.

47. In Florida specifically where Defendants are all resident and the services related to Plaintiff were to be conducted, the practice of law is regarded as "not limited to litigation in courts but rather includes giving of legal advice and counsel and preparing legal instruments and contracts by which legal rights are defined or secured…" In re The Florida Bar, 267 So.2d 824 (1972).

48. Defendant All Mobile Solutions includes false license information in their service agreement, stating Defendant Lori "Brianne" Martin is a financial advisor with license # TP 83183. A license search of #TP 83183 results in an expired commercial telephone salesperson license for Lori B. Martin.

49. Additionally, Defendants never intended to fulfill the services of its contracts or website offerings.

50. Defendants never intended to honor the money-back guarantee upon failure of the timeshare exit services.

51. Defendants never intended to fulfill the services of financial fraud recovery.

52. Defendants never intended to honor the money-back guarantee upon the failure of the financial fraud recovery.

53. Defendants knew and intended that the target, Plaintiff, would rely on the false promises and representations made pursuant to the scheme.

54. The false promises and representations were material to the transaction.

55. Plaintiff relied on those promises and representations.

56. Plaintiff was unaware they were false.

57. Plaintiff was damaged by the false promises and representations.

58. The scheme further intends those agents employed by the legal entities Defendants All Mobile Solutions and AMS, and directed, supervised, and hired by Defendants Cutruzzola, Paramo, and Reynolds will contact prospective "clients" by agents such as Defendants Troisi and Martin over the telephone and wires in interstate commerce.

59. The scheme dictates that the agents employed by Defendants All Mobile Solutions and AMS on these calls to prospective clients will perpetuate artificial devices and representations made by the legal entities on the websites and additionally the agents will make new fraudulent misrepresentations and promises on the phone calls to accomplish the goals of the scheme.

60. Each of the artifices and elements of this scheme were designed and intended, independently and together, to induce a timeshare owner to rely on them and purchase the services and provide the funds requested.

61. This scheme was created and devised by Defendants Cutruzzola, Paramo, and Reynolds for the purposes of depriving timeshare owners of their money by dishonest means through the use of the false devices described herein to create an air of legitimacy, good reputation, and experience and by promising terms and services they never intended to perform and are legally barred from providing.

<u>Fraudulent Misrepresentations</u>
<u>and Uses of Wires in Execution of the Scheme to Defraud</u>

62.     Defendant Troisi or Defendant Martin, under direction by Defendants Cutruzzola, Paramo, and Reynolds, made over seventeen separate phone calls originating in Florida to Plaintiff residing in Georgia, between December 2016 and September 2019. Each of these calls using the wires were made through interstate commerce and executing the Fraudulent Scheme described above.

63.     Each of the phone calls made were pursuant to the scheme described above, the false promises and representations described above were either made in the calls or perpetuated and reinforced by the calls.

64.     Each of the representations made by Defendants Troisi or Martin in the phone calls were false, known by Defendants to be false, made with intent that Plaintiff would rely on them, material to the transaction as a whole and each individual transaction, not known by Plaintiff to be false, reasonably relied on by Plaintiff, and in each case Plaintiff was damaged. The calls are described herein:

   a. December 2016, Defendant Troisi called Plaintiff and stated she worked for a new firm which will terminate his timeshare contracts with Wyndham. Defendant Troisi conveyed to Plaintiff the 100% guarantee and proposed the timeshare exit services pursuant to the scheme. These schemes and services as described above were ultimately unlawful, Defendant Troisi was aware they were unlawful and that she nor the other Defendants had no intent to perform those services as described.

b. April 2017, Defendant Troisi called Plaintiff over the phone and made identical representations as directly above and solicited Defendant to pay for these services to cover additional timeshare interests.

c. May 5th, 2017, Defendant Troisi called Plaintiff again over the telephone to sign an additional contract, made the identical representations stated above and as described in the Fraudulent Scheme. By this time, Plaintiff has paid approximately $17,000 for services on a total of five contracts.

d. June 2017, Defendant Troisi again called, this time stating that "an item was found holding up the timeshare cancellation. That unless that item was taken care of Plaintiff would not be able to get out of his other five contracts. That the contracts are all tied to a 'vacation plan' at Wyndham which needs to be separately canceled. Defendant Troisi also stated that if it turns out the vacation plan was already canceled that he will receive his money back.

e. July 2017, Defendant Troisi called Plaintiff again and asked if he was interested in recovering the funds, he paid to prior timeshare rental or resale companies. She stated she has personally investigated these firms.

f. October 2017, Defendant Troisi called Plaintiff again, and stated that she needed an additional $3,500 as "more resources were required and as soon the money is recovered, it will be forwarded to him."

g. February 2018, Defendant Troisi called Plaintiff again, this time she stated that more resources were required for the timeshare exit. When Plaintiff objected that he already paid for those contracts, Defendant Troisi stated that "the firm was

    leveraging Wyndham to return the funds Plaintiff paid to Wyndham", and "our firm is successful in getting money back, trust me Mr. Turner."

h. Between February 2018 and April 2018, Defendant Troisi called again and stated that they discovered he owned at another Wyndham property. When Plaintiff objected, she stated that as a member of Club Wyndham, he owned shares at many more properties than he was aware.

i. April 2018, Defendant Martin called Plaintiff and stated that Defendant All Mobile Solutions was assigned his contract and that there was an additional fee to process his account.

j. May 2018, Defendant Troisi called Plaintiff to ask for more money. Defendant Troisi stated that All Mobile Solutions discovered an additional Wyndham contract, when Plaintiff objected, Defendant Troisi stated, "you want to get your money back don't you, you need to pay for this additional contract."

k. Again, between September 2018 and October 2018, Defendant Troisi made multiple phone calls relating to an additional contract discovered and induced Plaintiff to pay an additional $13,900. Defendant Troisi stated that there were additional Wyndham contracts discovered.

l. On December 26th, December 28th, and December 31st, 2018, Defendant Troisi called to request funds in the amount of $7,500 to prepare and record all the deeds to Wyndham in order to terminate his timeshare interests. Plaintiff stated he did not have the funds available today. Defendant Troisi asked Plaintiff if he could make a cash advance on his credit card and if so, the money recovered from Wyndham would be back to him before the credit card bill for the cash advance.

    m. On multiple occasions in January, February, March and April of 2019, Defendant Troisi called Plaintiff asking for additional funds. Each time when Plaintiff objected Defendant Troisi stated that, "if he did not pay, she could not process the recovery of funds and he would be in violation of his agreement to pay these costs. So, he could pay and get it all back or lose all he paid."

    n. On September 11th, 2019, Defendant Troisi called again to request $4,000 to process the check. She stated it is almost done and that he would be receiving a check for $248,000 shortly. When Plaintiff asked that this be put in writing, Defendant Troisi stated that "all phone calls are recorded and that he just needs to provide the company with the verification number 105-288 and that would give him access to the recording."

65. Plaintiff paid a total of $204,355 over the period between December 2016 and September 2019 based on the fraudulent misrepresentations made by Defendants Troisi and Martin through the auspices of Defendants All Mobile Solutions, and AMS, and the use of wires to execute the Fraudulent Scheme devised by Defendants Paramo, Cutruzzola, and Reynolds.

66. Plaintiff was not aware that there may be any reason to believe that Defendants were not anything more than what they showed themselves as, a service that was successful in getting timeshare owners out of their timeshare and recovering funds for those owners.

67. Up to September 2019, Defendants provided countless assurances that the matters were continuing with minor hiccups. Defendants provided reasonable excuses and justifications for the additional funds and the late discovery of additional contracts. The timeshare contracts and vacation plan which was the subject of the proposed services is a complicated morass of interweaving timeshare plans and regulations which is reasonable for a

timeshare owner to be unsure what it is he owns after multiple transactions with the timeshare resort.

68. Additionally, Plaintiff spoke with Defendant Reynolds at one point to discuss the pace and services promised. Defendant Reynolds assured Plaintiff that he will be satisfied and in 'good faith' Defendants refunded $3,000.

69. After September 2019, Plaintiff, assuming the issue with Defendants was merely a failure in diligence and timeliness on their part, attempted to resolve his concerns in good faith. In emailed discussions between Plaintiffs and Defendants, where Plaintiff requested either all his money back or completion of the service, Defendants provided reasons for delay that began with Covid and then a pregnancy making resolution difficult to accomplish. This occurred even until recently when Plaintiff lost patience and concluded that Defendants were ultimately not going to do what they promised.

## Conspiracy

70. All Defendants agreed amongst themselves, and with others unknown, to knowingly enter into the enterprise and to operate that enterprise through a pattern of racketeering activity.

71. All Defendants agreed to the common objective of the Enterprise as described above and agreed that wires would be utilized to execute the fraudulent scheme described above, designed by Defendants, and to make such fraudulent representations as described above, affecting interstate commerce.

**Civil Remedies**

72.     Pursuant to 18 USC §1964 (c), Plaintiff, who has been injured in his property, by reason of Defendants' violations of 18 USC §1962 may sue Defendants therefore to recover threefold damages sustained, cost of the suit, including reasonable attorney's fees.

73.     Plaintiff has sustained $204,355.00 in damages as a result of Defendants' violation of 18 USC §1962.

**Wherefore**, Plaintiff Kenneth A. Turner respectfully prays this Court to enter judgment in Plaintiff's favor and against Defendants for damages, attorney's fees and costs and such additional and further relief as this Court deems just and proper.

**Attorney for Plaintiff**

*/s/ Joshua D. Neally*
Joshua D. Neally   FL Bar# 31548
114 W. Main Street
Branson, Missouri 65616
Telephone: (417) 512-9400
Email: jdn@tloffice.com

# VERIFICATION

STATE OF <u>Georgia</u> )
                           ) SS.
COUNTY OF <u>Fayette</u> )

<u>Kenneth Turner</u>, of lawful age and being first duly sworn upon their oath, state that they are the Plaintiffs, and that the facts and matters as stated above are true according to their best knowledge, information, and belief.

*[signature]*
Kenneth Turner

SUBSCRIBED AND SWORN to before me this <u>8th</u> day of <u>February</u>, 2023

*[signature]*
NOTARY PUBLIC

My commission expires:
<u>07/04/2026</u>

*[Notary seal: JADE PERRY, NOTARY PUBLIC, EXP. 07/04/2026, PIKE COUNTY, GA]*